## NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

2023 CJ 1144
2024 CW 0143

## STATE OF LOUISIANA IN THE INTEREST OF K.C.N.

Judgment Rendered: ___MAY 2 9 2024___

\* \* \* \* \* \* \*

On Appeal from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. JC-0123-2022

Honorable Scott Gardner, Judge Presiding

\* \* \* \* \* \* \*

Jane Hogan
Hammond, Louisiana

Attorney for Appellant
A.N., mother of K.C.N.

Sandra B. Terrell
Covington, Louisiana

Attorney for Appellee
State of Louisiana, Department
of Children and Family Services

Betsy H. Smith
Mandeville, Louisiana

Attorney for Appellee
K.C.N.

Audrey M. Lamb
Baton Rouge, Louisiana

Attorney for Appellee
K.J., father of K.C.N.

\* \* \* \* \* \* \*

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

*GREENE, J. dissents with reasons.*

**PENZATO, J.**

A mother appeals a judgment terminating her parental rights. In an associated writ, she seeks review of an order denying her motion for continuing contact. For the following reasons, we affirm the judgment terminating her parental rights and deny her application for supervisory writs.

**FACTS AND PROCEDURAL HISTORY**

A.N. is the mother of K.C.N., who was born on April 19, 2022, while A.N. was incarcerated at the St. Tammany Parish Jail. A.N. was transported to St. Tammany Parish Hospital where she gave birth to K.C.N. On April 20, 2022, the Department of Children and Family Services (DCFS) received a report due to concerns that K.C.N. would have no legal caretaker when A.N. was discharged from the hospital and returned to jail. Upon investigation, DCFS spoke with A.N., who reported that prior to her incarceration, she was homeless. A.N. was not willing to provide information needed to assess K.C.N.'s father, possible family members, the names and location of her other children, or her previous residence. DCFS sought an instanter order, which was orally granted by the trial court, placing K.C.N. in the provisional custody of DCFS. At a continued custody hearing, A.N., through counsel, stipulated K.C.N. was in need of care; accordingly, the trial court continued custody of K.C.N. with the State, through DCFS.

The District Attorney of the 22nd Judicial District Court, State of Louisiana, filed a child in need of care petition on May 19, 2022, asserting A.N. had a valid finding of dependency due to her incarceration without a bond and her unwillingness to name K.C.N.'s father, thus leaving K.C.N. without a caretaker. The petition further asserted A.N. had three older children; A.N.'s parental rights had been terminated as to two of them and the third resided in Texas with the father. At the adjudication hearing on June 22, 2022, A.N., through counsel, stipulated K.C.N. was in need of care without admitting to the allegations of the petition. The trial court

2

adjudicated K.C.N. in need of care, ordered that K.C.N. remain in state custody in his current foster home placement, and approved DCFS's case plan with the goal of reunification. The case plan required A.N. to obtain and maintain legal employment and safe and stable housing; complete mental health and substance abuse evaluations and follow all treatment recommendations; resolve current legal issues and inform DCFS of any new arrests/legal issues; attend and complete a parenting program; pay $25.00 per month in parental contributions; and attend all court hearings, meetings, and visits with K.C.N. A.N. was released from jail in August 2022.

The initial permanency hearing was held on April 19, 2023. The DCFS case manager testified that DCFS did not believe A.N. had substantially complied with her case plan and identified three main areas of concern: mental health, steady employment, and housing. According to the case manager, A.N. had prior mental health issues requiring hospitalization but would not sign consents for the release of the records and had not completed a mental health evaluation. According to the case manager, she scheduled a psychological evaluation with Rafael L. Salcedo, Ph.D., a clinical psychologist, which A.N. participated in. The case manager testified that Dr. Salcedo recommended A.N. see a psychiatrist, and the case manager referred A.N. to Center of Hope; however, that evaluation never took place.

The case manager further testified that, while A.N. had maintained some form of employment during the case, she was currently unemployed, did not have sufficient income to meet K.C.N.'s needs, and had not paid parental contributions since November 2022. Finally, the case manager testified A.N. had never provided a physical address and DCFS had no idea whether she had a safe and stable house. The case manager testified DCFS's recommendation was that the case plan goal be changed to adoption.

A.N. testified at the hearing that she had obtained a job at Family Dollar in Algiers, Louisiana, but she could not state when she was going to start. She testified

her current apartment was near the Family Dollar where she was going to work, but she refused to give the address of the apartment "for security purposes." She acknowledged no one from DCFS had been able to assess her residence, but denied it was because she had not provided the agency with a physical address.

After hearing the testimony presented, the trial court ordered custody of K.C.N. be continued with the State. The trial court approved the change of the case plan goal to adoption, finding it to be in the best interest of K.C.N.'s safety and well-being.

Thereafter, on May 26, 2023, DCFS filed a petition for termination of parental rights, asking that A.N.'s rights be terminated pursuant to La. Ch.C. art. 1015(5)(b), for abandonment of K.C.N. by failing to provide significant contributions to his care for a period of six consecutive months, and La. Ch.C. art. 1015(6), failure to comply with her case plan.[1] In support, DCFS alleged that A.N. made no parental contributions since November 14, 2022. Additionally, DCFS alleged A.N. had not substantially complied with the court approved case plans and DCFS had no reasonable expectation of significant improvement in A.N.'s condition in the near future. Specifically, DCFS alleged A.N. had a history of instability and mental illness. DCFS further alleged A.N. had completed some portions of her case plan, although not willingly, but had shown no behavior change nor had she shown that she could sustain a significant period of stability. Most importantly, DCFS alleged A.N. had not addressed any of her mental health issues throughout the life of this case.

The trial court held a hearing on the petition for termination of parental rights on August 16 and 23, 2023. Based on the evidence presented, the trial court found

___

[1] Louisiana Children's Code article 1015 was amended by La. Acts 2023, No. 271, § 1, effective June 9, 2023. Act 271 renumbered article 1015, such that subparagraph (5) is now subparagraph (4), and subparagraph (6) is now subparagraph (5). In this opinion, we refer to the sections as they were numbered at the time the petition for termination of parental rights was filed.

DCFS proved the allegations of the petition by clear and convincing evidence and granted the motion to terminate A.N.'s parental rights.[2] The trial court further found termination of A.N.'s parental rights was in KC.N.'s best interest. The trial court signed a judgment on August 25, 2023, terminating A.N.'s parental rights. A.N. appeals from this judgment, contending the trial court erred by admitting hearsay evidence during the termination hearing; finding A.N. had not substantially complied with her case plan, DCFS provided reasonable efforts to achieve reunification, and there was no reasonable expectation of significant improvement in the near future; finding A.N. had abandoned K.C.N. by failing to pay parental contributions; and finding termination was in K.C.N.'s best interest.

On November 28, 2023, A.N. filed a motion for continuing contact, seeking continuing contact and visitation with K.C.N. while her appeal is pending. On November 29, 2023, the trial court held a hearing on A.N.'s motion. After hearing the case manager's testimony, the trial court found continued visitation after the termination of A.N.'s parental rights had been unwieldy and detrimental to K.C.N.'s best interest, and denied the motion. The trial court signed an order in accordance with its ruling on December 6, 2023. A.N. filed an application for a supervisory writ of review. The writ was referred to this appeal. *State of Louisiana in the Interest of K.C.N.*, 2024 CW 0143 (La. App. 1 Cir. 2/26/24).

## LAW AND ANALYSIS

### *Appeal of August 25, 2023 Judgment*

Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Louisiana Children's Code article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights of parents. In order to terminate a person's parental rights, the court must find the State has established

---

[2] DCFS established that K.J. is K.C.N.'s biological father. At the time of the termination hearing, it appears a petition to terminate the father's parental rights was pending.

at least one of the statutory grounds contained in Article 1015 by clear and convincing evidence. See La. Ch.C. art. 1035(A); *State in Interest of C.F.*, 2017-1054 (La. 12/6/17), 235 So. 3d 1066, 1072. Even upon finding the State has met its evidentiary burden, a court may not terminate parental rights unless it determines that to do so is in the child's best interest. See La. Ch.C. art. 1037(B). Whether termination of parental rights is warranted is a question of fact, and a trial court's factual determinations will not be set aside in the absence of manifest error. *State in Interest of E.O.*, 2018-1093 (La. App. 1 Cir. 2/6/19), 272 So. 3d 552, 556. Under the manifest error standard, this Court does not decide whether the factfinder was right or wrong; rather, we are required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. *State in Interest of H.R.*, 2021-1328 (La. App. 1 Cir. 2/25/22), 341 So. 3d 592, 598.

In this case, the trial court terminated A.N.'s parental rights under La. Ch.C. art. 1015(5)(b) and (6), which provide:

> (5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> * * *
>
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> * * *
>
> (6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

6

At the termination hearing, the DCFS case manager testified K.C.N. was removed from parental custody on April 21, 2022. The case manager further testified that in compiling a child's foster care record, she collects and maintains other records concerning the parents. Such records include prior or current criminal history, history for substance abuse and mental health evaluations, and other child welfare records. According to the case manager, these records assist DCFS in formulating a case plan for services for the parent. In this case, the case manager learned A.N. had previous child welfare cases in Colorado and Texas. In connection with the case manager's testimony, the State offered into evidence the Texas and Colorado child welfare records. Counsel for A.N. objected on the basis of hearsay. The trial court overruled the objection, indicating this was a bench trial, and it was "well aware of the hearsay and will disregard any inadmissible hearsay." The case manager testified that the final outcome in both cases was the termination of parental rights and adoption of the children.

The State introduced into evidence without objection a felony bill of information for obstruction of justice by using or threatening force, with an arrest date of May 4, 2020, the felony charge against A.N. that remained pending at the time of the termination hearing. The State also introduced into evidence without objection K.C.N.'s medical records from his birth at St. Tammany Parish Hospital. The records indicated A.N. had received little pre-natal care and had been in homeless shelters in New Orleans and Catholic Charities in Baton Rouge. The medical records also indicated psychiatric hospitalizations for A.N. in 2019, 2020, and 2021. The case manager testified this information influenced her approach to formulating a case plan for A.N., as the records indicated instability and mental health issues.

The initial goal for K.C.N. was reunification. The initial case plan dated June 1, 2022 was filed into the record. The case plan included the requirements that A.N.

obtain and maintain legal employment and safe and stable housing; complete a mental health evaluation and follow all treatment recommendations; and pay $25.00 per month in parental contributions. A March 27, 2023 case plan filed into evidence detailed A.N.'s progress. The case plan review noted that A.N. was currently unemployed and she had stated that she lost her job because she got into an argument with a co-worker. She had not provided DCFS with her home address, and the case manager had been unable to conduct a home visit. According to the case plan review, A.N. had completed a mental health evaluation with Dr. Salcedo, who recommended DCFS refer A.N. for a psychiatric evaluation; A.N. had completed the assessment and was scheduled to complete the evaluation with Center of Hope in New Orleans on April 11, 2023. Her last parental contribution was noted to have been made in November 2022.

Additionally, the case manager testified as to A.N.'s non-compliance with the case plan. According to the case manager, during the pendency of the case, A.N. had four jobs. At the beginning of the case, A.N. did an eight-week program that paid her, and after the eight weeks she told the case manager she would be doing a lab assistant program that paid her, but she was fired from that job. At the permanency hearing in April 2023, A.N. told the case manager she would have a job at Family Dollar, and in August 2023, she told the case manager she had quit that job and was currently working for Uber. With regard to housing, the case manager testified A.N. provided her address at the permanency hearing and the case manager was able to assess the home, which appeared appropriate. However, the case manager testified she had received a call that A.N. was being evicted from that home.

The case manager testified A.N. participated in a psychological evaluation with Dr. Salcedo, who recommended that she participate in a psychiatric evaluation. The case manager referred A.N. to Center of Hope for the psychiatric evaluation. The case manager testified she made the appointment for A.N., who completed the

8

first portion of the evaluation. The case manager set up an appointment for the second half of the evaluation, but was called by the administrator and told that the second portion would be cancelled because, at the first portion, A.N. told the evaluator she had no prior mental health issues. A.N. told the case manager she underwent a psychiatric evaluation at River Oaks Hospital. The case manager contacted River Oaks and was advised there were no records that A.N. had completed an evaluation at the hospital, and A.N. did not provide any records. Finally, with regard to the parental contribution requirement, the case manager testified A.N. made payments on October 2, 2022, November 14, 2022, and recently, on August 2, 2023.

The case manager further testified that she believed substantial reformation of A.N. in the near future was unlikely, as A.N. had repeatedly displayed patterns of instability and mental health issues. According to the case manager, there was nothing else DCFS could do for A.N. to reform her in the very near term.

A.N. testified at the termination hearing. She testified she was employed with Uber. According to A.N., she did not work at Family Dollar very long because it was not safe. With regard to housing, A.N. testified she moved into an apartment in December 2022 and signed a six-month lease, which was not renewed. She acknowledged she did not provide DCFS with an exact address of that apartment until April 2023, but she had offered to provide directions to the apartment before that time. A.N. testified she went to an eviction hearing on August 15, 2023, and the judge told her she had one week to remove her belongings. According to A.N., she currently lives in an apartment near Oakwood Shopping Center. She did not provide an address, but indicated the address was in some paperwork she had provided to her attorney.

With regard to her mental health, A.N. testified she was diagnosed with major depressive disorder when she was living in Texas and was prescribed medication at

9

that time. She testified she was evaluated by Dr. Salcedo for this case, and the case manager told her Dr. Salcedo recommended she get a second opinion. A.N. testified she went to Center of Hope for what she thought was an evaluation, but was only an assessment. A.N. testified she advised Center of Hope she was there because of her case plan, and as far as she knew, it was standard. A.N. further testified she had an evaluation appointment scheduled, but someone from Center of Hope called and told her it was cancelled because Center of Hope was meant for people coming for continued treatment with Medicaid paying for their services. She testified she received an evaluation at River Oaks sometime after January 2023. She also testified she was going to counseling at Holy Cross College.

Finally, A.N. testified she gave her first parental contribution directly to K.C.N.'s foster parents. According to A.N., she gave them $125.00 cash. She testified she gave DCFS a $125.00 money order on October 5, 2022, and then another $50.00 money order.

After the testimony, the trial court found the State had proven by clear and convincing evidence the facts in the petition and, accordingly, granted the motion to terminate A.N.'s parental rights. The trial court based its determination on the lack of substantial parental compliance with A.N.'s case plan for services, no reasonable expectation of significant improvement in A.N.'s condition or conduct in the near future, and a need for permanence. It found reasonable efforts by DCFS to prevent the removal, reunite the family, and achieve permanence. The trial court further found it was in the best interest of K.C.N. to terminate A.N.'s parental rights.

In her first assignment of error, A.N. argues the trial court erred by allowing the introduction of the Texas and Colorado welfare records. A.N. contends the introduction of these records violated her right to a fundamentally fair proceeding, as the trial court's ruling that A.N. was mentally unfit to care for K.C.N. was based primarily on these out-of-state records. In a related argument, A.N. contends the

10

trial court erred in finding she did not substantially comply with the mental health component of her case plan because, absent the hearsay records, there is no substantiation for the State's claim that A.N. had untreated mental health issues. The State counters the records were admissible under the business records exception to the hearsay rule.

Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay is not admissible except as otherwise provided by the Louisiana Code of Evidence or other legislation. La. C.E. art. 802. Records of regularly conducted business activity are not excluded by the hearsay rule. La. C.E. art. 803(6). To exclude business records from the hearsay rule and render them admissible, Article 803(6) requires the court to determine from the testimony of either the "custodian or other qualified witness" that: (1) the record was made at or near the time of the event; (2) the record was made either by, or from information transmitted by, a person with knowledge; (3) the record was made and kept in the course of a regularly conducted business activity; (4) it was the regular practice of that business activity to make and keep such records; (5) the recorded information was furnished to the business either (a) by a person who was routinely acting for the business in reporting the information; or (b) in circumstances under which the statement would not be excluded by the hearsay rule; and (6) neither sources of information nor the method or circumstances of preparation indicate a lack of trustworthiness. *State in Interest of T. B.*, 2020-0929 (La. App. 1 Cir. 2/19/21), 320 So. 3d 1143, 1156. The person who actually prepared the documents need not have testified, so long as other circumstantial evidence and testimony suggests the documents are trustworthy. *Id.* A qualified witness only needs to be familiar with the record-keeping system of the entity whose business records are sought to be introduced. *Velocity Investments, LLC v. Pasqua*, 2022-0626 (La. App.

11

1 Cir. 1/10/23), 361 So. 3d 23, 29.

At the termination hearing, A.N. objected to the admission of the Texas and Colorado child welfare records as hearsay. The State responded the records were business records and inherently trustworthy because they were not prepared for the purpose of testimony. The case manager testified she was familiar with the information contained in the Texas and Colorado child welfare records but offered no testimony she was familiar with the record-keeping system of either agency.

The State offered no foundation evidence as is required to allow the Texas and Colorado child welfare records to be admitted pursuant to La. C.E. art. 803(6). Accordingly, we find these records were improper hearsay evidence, and the trial court erred in admitting them. When error is detected, it must be weighed to determine whether such error is harmless or prejudicial. *Short v. Gaylord Chemical Corp.*, 98-0606 (La. App. 1 Cir. 4/1/99), 731 So. 2d 493, 496. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731, 735.

We find no merit to A.N.'s assertion that the out-of-state child welfare records were the only evidence of her mental health issues. A.N. testified she was first diagnosed with major depressive disorder when she lived in Texas. The medical records from K.C.N.'s birth noted A.N.'s past medical history of mental health disorder and previous psychiatric hospitalizations. Both the case manager and A.N. testified that Dr. Salcedo referred A.N. for a psychiatric evaluation. Thus, we find the introduction of the out-of-state child welfare records was harmless and did not deprive A.N. of her right to a fundamentally fair proceeding.

In her second assignment of error, A.N. contends the trial court erred in finding she had not substantially complied with her case plan, DCFS provided reasonable efforts to achieve reunification, and there was no reasonable expectation of significant improvement in the near future. A.N. contends the trial court found

12

that she had not complied with her case plan primarily due to the court's conclusion that she had not addressed her mental health issues. A.N. contends this ruling should be vacated because it is not based on objective, admissible evidence. A.N. further contends she complied in all areas of her case plan with the exception of housing, and thus the trial court's finding that she lacked substantial compliance was in error.

Louisiana Children's Code article 1036 governs proof of parental misconduct, and provides, in pertinent part:

> C. Under Article 1015(6), lack of parental compliance with a case plan may be evidenced by one or more of the following:
>
> (1) The parent's failure to attend court-approved scheduled visitations with the child.
>
> (2) The parent's failure to communicate with the child.
>
> (3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
>
> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
>
> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
>
> (6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
>
> (7) The persistence of conditions that led to removal or similar potentially harmful conditions.
>
> (8)(a) The parent's failure to provide a negative test result for all synthetic or other controlled dangerous substances, except for any drug for which the parent has lawfully received a prescription, at the completion of a reasonable case plan.
>
> (b) For purposes of this Article, "controlled dangerous substance" shall have the meaning ascribed in R.S. 40:961.
>
> D. Under Article 1015(6), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:
>
> (1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a

13

substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

Reformation sufficient to prevent termination of parental rights requires that the parent demonstrate a substantial change, such as significantly altering or modifying that behavior which served as the basis for and resulted in the State's removal of the child from the home. *State in Interest of T.L.*, 2021-0728 (La. App. 1 Cir. 12/22/21), 340 So. 3d 4, 12, writ denied, 2022-00170 (La. 3/2/22), 333 So. 3d 827.

A.N.'s case plan required her to complete a mental health evaluation and follow all treatment recommendations. She participated in a psychological evaluation with Dr. Salcedo on March 3, 2023. Dr. Salcedo recommended that A.N. be referred for a psychiatric evaluation. The case manager referred A.N. to Center of Hope. A.N. completed the first portion of the evaluation, but denied she had prior mental health issues, and the second portion of the evaluation was cancelled. A.N. testified she completed a psychiatric evaluation at River Oaks Hospital sometime after January 2023, but failed to provide any records. Upon consideration of the evidence in the record, we find the trial court's finding that A.N. failed to comply with the case plan requirement with regard to a mental health evaluation and follow-up treatment was not manifestly erroneous or clearly wrong.

Moreover, the trial court's finding that A.N. failed to comply with the case plan was not based solely on her failure to comply with the required program of treatment and rehabilitation services for her mental health issues. A.N. also failed to maintain legal employment as required by her case plan. She quit her job at

Family Dollar after only a short time, and although she testified she was employed with Uber, she failed to provide any evidence of her earnings. Further, A.N. failed to make the ordered monthly contributions toward the costs of K.C.N.'s care, making only sporadic, lump-sum payments. Finally, A.N. failed to provide her address to the case manager until April 19, 2023, at the permanency hearing. The case manager was able to assess the home, which she testified appeared appropriate; however, A.N. was evicted from that home on August 15, 2023, and failed to provide her new address so that a home study could be conducted. Thus, after considering the entire record, we find no error in the trial court's determination that the State established by clear and convincing evidence that A.N. had not substantially complied with her case plan and there was no reasonable expectation of significant improvement in the near future.

We also find no merit to A.N.'s argument that DCFS failed to make reasonable efforts to help A.N. reunify with K.C.N. See La. Ch.C. art 682 (requiring DCFS to demonstrate reasonable efforts were made to reunify the parent and child after removal). "Reasonable efforts" are defined by La. Ch.C. art. 603(26) as "the exercise of ordinary diligence and care by the department throughout the pendency of a case pursuant to the obligations imposed on the state by federal and state law to provide services and supports designed and intended ... to reunite families after separation, and to achieve safe permanency for children." This requires DCFS to at least direct parents toward appropriate agencies that may be able to assist them in meeting their responsibilities and removing the impediments to reunification with their children. *State in Interest of H.R.*, 341 So. 3d at 601-02.

The case manager testified she provided A.N. with a copy of the case plan, spoke with her about what she needed to do, and asked if there was something she needed for support. A.N. advised the case manager that she was struggling with housing and trying to find a job. According to the case manager, DCFS did not have

15

any services it could provide, but she would look. The following week, A.N. advised the case manager that she was provided housing with Thrive New Orleans. Thus, no referrals were made to A.N. to help her with housing. The case manager testified as to referrals made to Center of Hope for a mental health evaluation. Considering the entire record, we find no error in the trial court's determination that DCFS made reasonable efforts to reunify A.N. with K.C.N.

Although only one ground for termination need be established, in this case, the trial court also found the State met its burden of proof by clear and convincing evidence as to the allegations under La. Ch.C. art. 1015(5)(b). On appeal, A.N. contends the State failed to prove she abandoned her son by clear and convincing evidence. She argues the State failed to prove six consecutive months of non-payment. She further argues she never intended to permanently avoid future parental responsibilities.

The case plans approved by the court required A.N. to make monthly payments of $25.00. The petition in the matter was filed on May 26, 2023. The State provided evidence that prior to that time, A.N. made parental contributions on October 2, 2022, and November 14, 2022. Therefore, at the time the petition was filed, more than six consecutive months had elapsed since the November 14, 2022 payment. On appeal, A.N. argues that she made a cash payment to the foster parents in the amount of $125.00 prior to October 2022, then on October 2, 2022, she made a payment of $125.00, which was an overpayment for the five months of payments that she missed. Thus, she argues the $50.00 payment she made on November 14, 2022, was her contribution for November and December. We find no merit to this argument. Under her case plan and La. Ch.C. art. 1015(5)(b), A.N. was required to make monthly contributions. The State provided clear and convincing evidence that she failed to do so.

Under the plain language of La. Ch.C. art. 1015(5)(b), the intent to

16

permanently avoid parental responsibility is demonstrated by the parent's failure to provide significant contributions to the child's care and support for any period of six consecutive months. *State in Interest of H.R.*, 341 So. 3d at 599. Here, the State provided evidence that A.N. made no significant contributions for a period of six consecutive months. Thus, the trial court did not err in finding the State proved by clear and convincing evidence the statutory ground of abandonment. See La. Ch.C. art. 1015(5)(b).

Finally, we find no error in the trial court's determination that termination of A.N.'s parental rights is in the best interest of K.C.N. As indicated above, A.N. has demonstrated an inability to comply with her case plan. At the time of trial, K.C.N. was 16 months old and had lived with his foster parents since his birth. According to the case manager, K.C.N. was "doing great" in his foster home. He was securely attached to his foster parents and had a "great" bond with their three-year-old daughter. The trial court noted in its written reasons that K.C.N. had permanency waiting with "a loving, appropriate, certified foster family with demonstrated capacity to love, care for, and raise him." The trial court found removal of K.C.N. from the only family he had ever known to place him in the custody of an unfit mother "would be a disaster for his health, safety and well-being and unconscionable."

After considering the entire record, we find a reasonable factual basis exists for the trial court's finding that termination of A.N.'s parental rights was in the best interest of K.C.N. Thus, we find no error in the trial court's judgment terminating A.N.'s parental rights.

*Application for Supervisory Writ of Review of December 6, 2023 Order*

We now address A.N.'s challenge to the trial court's order denying her motion for continuing contact with K.C.N. Louisiana Children's Code article 1037.1(A) addresses pre-adoption continuing contact with biological relatives and provides:

17

Subsequent to a termination of parental rights judgment when custody is granted to the department, the court may order continuing contact between the child and the parent, sibling, or other biological relative. The court may grant such an order only after it makes finding of fact that continuing contact is in the best interest of the child. The court may receive expert testimony on the issue of continuing contact.

The comments to La. Ch.C. art. 1037.1(A) provide guidance as to its intended application. *State ex rel. J.S.W. v. Reuther*, 36,421 (La. App. 2 Cir. 9/18/02), 827 So. 2d 1199, 1203. Maintaining some limited contact with the parent may be critical to the child's adjustment in foster care while awaiting transition to a permanent home through adoption. La. Ch.C. art. 1037.1, Comment(a) (1997). The issue of continued contact between the child and any biological relative is left to the discretion of the court, guided only by consideration of the child's best interest. La. Ch.C. art. 1037.1, Comment(c) (1997). Ordering interim continuing contact between a child and his biological relatives is not always appropriate and thus should be neither routinely ordered nor invariably denied. La. Ch.C. art. 1037.1, Comment (2001). The decision requires sufficient information about the strength, nurturing value, and duration of the particular child's previous relationships with biological family members and his or her needs in the foreseeable future in order for the court to make a reasonable determination that maintaining contact pending adoption serves the child's best interests. *Id.*

Appellate review of a trial court's findings with respect to child visitation is governed by the manifest error standard of review. *Landry v. Thomas*, 2011-1571 (La. App. 1 Cir. 12/21/11), 2011 WL 6780138, *3, writs denied, 2012-0071, 0185 (La. 2/1/12), 79 So. 3d 1018, 1019.

The DCFS case manager testified at the hearing on A.N.'s motion for continuing contact. She indicated A.N.'s visits with K.C.N. were once a month at the DCFS office. She testified the visits were appropriate and the interaction between A.N. and K.C.N. was positive. The case manager further testified that while

K.C.N. has a bond with A.N., she did not believe it is a full attachment like she observed between K.C.N. and his foster parents.

As to K.C.N.'s behavior surrounding the visits, the case manager testified the foster parents reported that after the October 2023 visit, K.C.N. was very quiet and had an unusual demeanor. They expressed concern about his disruptive and restless sleep that lasted for days following the visit.

The case manager further testified A.N.'s untreated mental health illness gave her concerns about her spending time with K.C.N. When asked if she believed additional visits between K.C.N. and A.N. would serve any useful purpose for K.C.N., the case manager stated, "[P]ossibly not." She testified that what K.C.N. needed most now was stability, consistency, and positive interpersonal relationships, and continuing a chaotic visitation schedule with his biological family went against those needs. She testified the current visitation was not best suited for K.C.N.'s needs.

We note that in this case, K.C.N. has been in the care of his foster family since birth and is not in a transition mode from his "birth home" to a foster home. Based upon the record of this matter, we find a reasonable factual basis exists for the trial court's finding that continued contact with A.N. is not in K.C.N.'s best interests. Thus, we find no error in the trial court's ruling denying A.N.'s motion for continuing contact.

## CONCLUSION

For the reasons set forth above, the trial court's August 25, 2023 judgment terminating the parental rights of A.N. is affirmed. The application for supervisory writ of review of the trial court's December 6, 2023 order is denied. All costs are assessed to A.N.

**JUDGMENT AFFIRMED; WRIT DENIED.**

19

# STATE OF LOUISIANA
## COURT OF APPEAL
## FIRST CIRCUIT

## DOCKET NUMBER
## 2023 CJ 1144

## STATE OF LOUISIANA

## IN THE INTEREST OF K.C.N.

**GREENE, J., dissenting.**

I respectfully dissent from the majority opinion, because I think the trial court erred in finding the State proved an alleged ground for termination of AN's parental rights by clear and convincing evidence and in finding that termination is in KCN's best interest. I also think the trial court erred in denying AN's motion for continuing contact with KCN pending this appeal.

Parents have a natural, fundamental liberty interest to the continuing companionship, care, custody, and management of their children. *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). This commanding liberty interest is perhaps the oldest of the fundamental liberty interests recognized by the United States Supreme Court and does not evaporate simply because a parent has not been a model parent or has lost temporary custody of her child to the State. *State ex rel. H.A.B.,* 2010-1111 (La. 10/19/10), 49 So.3d 345, 366. Permanent termination of the legal relationship between natural parents and children is one of the most drastic actions the State can take against its citizens. *State in Interest of A.L.D.,* 2018-1271 (La. 1/30/19), 263 So.3d 860, 863. However, I acknowledge the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist. *Id.*

Involuntary termination of parental rights is a two-part inquiry. First, the State must prove at least one statutory ground for termination by clear and convincing evidence. *See* La. Ch.C. arts. 1015 and 1035(A). That is, the State must prove the existence of the ground for termination is highly probable. *See State in Interest of A.L.D.,* 263 So.3d at 863. Second, after the State proves a ground for termination, the trial court

must also determine whether termination is in the child's best interest. *See* La. Ch.C. art. 1039(B); *State in Interest of A.L.D.*, 263 So.3d at 863; *State in Interest of A.B.*, 2023-0655 (La. App. 1 Cir. 1/19/24), ___ So.3d ___, ___, 2024 WL 205495, *4, *writ denied*, 2024-0021 (La. 3/7/24), 30 So.3d 552.

Statutory Grounds for Termination

In this case, the State based its termination petition on former La. Ch.C. art. 1015(5)(b) and former La. Ch.C. art. 1015(6) (now La. C.C. arts. 1015(4)(b) and (5), respectively). *See* footnote 1 of the majority opinion.

Under former La. Ch.C. art. 1015(5)(b), the State was required to prove AN demonstrated an intention to permanently avoid parental responsibility by "[failing] to provide significant contributions to [KCN's] care and support for any period of six consecutive months." AN testified that she gave her first payment directly to KCN's foster parents in the form of $125 cash. The record also shows that AN paid $125 on October 2, 2022; $50 on November 14, 2022; and, $100 on August 2, 2023. I concede that the case plan required AN to make monthly $25 payments, and that she instead made sporadic lump-sum payments; however, the important fact is that AN *did pay*, and notably, her total payments equaled the amount she was required to pay monthly. Thus, since AN paid, I do not think her failure to pay in monthly installments warrants the drastic remedy of termination of her parental rights.

Next, under former La. Ch.C. art. 1015(6), the State was required to prove AN demonstrated an intention to permanently avoid parental responsibility because: (1) at least one year had elapsed since KCN's court-ordered removal from AN's custody; (2) AN had not substantially complied with the court-approved case plan as necessary for KCN's safe return; (3) despite earlier intervention, there was no reasonable expectation of significant improvement in AN's condition or conduct in the near future, considering KCN's age and need for a safe, stable and permanent home.

Herein, the court-approved case plan required AN to: obtain and maintain legal employment; obtain and maintain safe and stable housing; complete a mental health evaluation and follow all treatment recommendations; and pay the $25/month parent contribution. The record shows that AN had several jobs, secured and then lost one

2

apartment that the caseworker found suitable, underwent a mental health evaluation by Dr. Salcedo, was assessed for further treatment, consistently had positive visitation with KCN, and paid parental contributions. Although AN did not maintain a job at a single place of employment, nor stable housing at a single location, nor continually treat her mental health issues, nor make her payments on a monthly basis, I think the efforts she *did make* collectively showed "substantial compliance" with the case plan. I also think AN's efforts and cooperation with the State showed a reasonable expectation that her condition/conduct would significantly improve in the near future, even though problems still existed. *See State in Interest of L.L.Z. v. M.Y.S.*, 620 So.2d 1309, 1317 (La. 1993) (finding a reasonable expectation of reformation when the parent had cooperated with state officials and had shown improvement, although all of the problems that exist have not been eliminated); *also see State in Interest of A.B.*, ___ So.3d at ___, 2024 WL 205495 at *6 (noting that recent compliance with a case plan can support a finding that termination of parental rights is not in a child's best interest). Thus, I think the State failed to prove by clear and convincing evidence that she did not "substantially comply" with the case plan and that it is highly probable that "there was no reasonable expectation of significant improvement in [AN's] condition or conduct." I think the trial court manifestly erred in finding otherwise.

Best Interest of the Child

Even if the State had proved a ground for termination by clear and convincing evidence, I think, at this stage of the proceedings, the trial court manifestly erred in finding termination was in KCN's best interest. The best interest determination is a separate consideration and envisions examination of any special conditions or exceptional circumstances that may exist. *State in Interest of A.B.*, ___ So.3d at ___; 2024 WL 20549 at *6. Notably, the State filed its termination petition approximately 13 months after KCN's birth, barely a year after his court-ordered removal from AN's custody, and at a time when AN was continuing to make efforts to be reunited with KCN. Further, given the pending termination proceeding against KCN's biological father, KCN will not be free for adoption until that matter is decided; thus, it appears that continuing efforts to reunify KCN with AN would be in his best interest. Rather than rush to terminate AN's parental

3

rights, I think the State failed to fulfill its duty to undertake reasonable efforts to assist AN in removing the obstacles to reunification with KCN. *See* La. Ch.C. art. 682(A); *see State ex rel. A.T.*, 2006-0501 (La. 7/6/06), 936 So.2d 79, 83-84. Again, I think the trial court manifestly erred in finding otherwise.

I think this Court should reverse the trial court's judgment of termination of AN's parental rights, grant AN's writ application, grant her motion for continuing contact, and remand this matter for further proceedings.